# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| REPEAT PRECISION, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:21-cv-104 |
| | § | |
| DYNAENERGETICS EUROPE GMBH, | § | JURY TRIAL DEMANDED |
| and DYNAENERGETICS US, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DOCUMENT FILED UNDER SEAL

### Motion to Exclude All Royalty Opinions of Dyna's Expert Ms. Joanne Johnson

# TABLE OF CONTENTS

I.      Summary of the Argument.................................................................................................1

II.     Background ......................................................................................................................4

III.    Legal Standard ................................................................................................................6

IV.     Argument .........................................................................................................................7

        A.      Ms. Johnson's proposed ongoing royalty calculation is inadmissible....................7

                1.      The March 2018 license is dissimilar to the hypothetical
                        negotiation.................................................................................................7

                2.      Ms. Johnson's opinion as to whether third party alternatives
                        were available to Dyna's customers is irrelevant. ....................................10

        B.      Ms. Johnson's proposed lump sum royalty calculation is inadmissible. ..............12

                1.      Dyna cannot remedy its failure to disclose the HypoSets during
                        fact discovery. ..........................................................................................12

                2.      Dyna failed to carry its burden of showing that the HypoSets
                        were available to it in 2020.......................................................................16

                3.      Ms. Johnson attempts to impermissibly cap the lump sum
                        royalty at the cost of implementing the HypoSets. ...................................19

V.      Conclusion ....................................................................................................................20

# TABLE OF AUTHORITIES

Cases

*Allergan, Inc. v. Teva Pharm. USA, Inc.*,
    2017 WL 1512334 (E.D. Tex. Apr. 27, 2017) ....................................................14, 15

*Astrazeneca AB v. Apotex*,
    985 F. Supp. 2d 452 (S.D.N.Y. 2013), *aff'd in relevant part*, 782 F.3d 1324
    (Fed. Cir. 2015) ....................................................................................................18

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015) ...............................................................2, 11, 12

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020) ..................................................................7, 8, 9

*DataTreasury Corp. v. Wells Fargo & Co.*,
    2011 WL 8810604 (E.D. Tex. Aug. 2, 2011) ........................................................20

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
    2017 WL 5137401 (E.D. Tex. Nov. 4, 2017), *rev'd on other grounds*, 955
    F.3d 1317 (Fed. Cir. 2020) .............................................................2, 13, 14, 15

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ...................................................................1, 8, 9

*Freeny v. Murphy Oil Corp.*,
    2015 WL 11108703 (E.D. Tex. May 29, 2015) ....................................................14

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
    318 F.Supp. 1116 (S.D.N.Y.1970) .............................................................. *passim*

*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999) ....................................................................16, 18

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
    2020 WL 2499810 (E.D. Tex. May 14, 2020) ......................................................13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    2011 WL 197869 (E.D. Tex. Jan. 20, 2011) .................................................2, 3, 17

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..................................................................................8

*Linear Tech. Corp. v. Micrel, Inc.*,
    2006 WL 8425047 (N.D. Cal. June 9, 2006) .......................................................20

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).............................................................................4, 6, 11, 15

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) *modified in other respect*, 557 F.3d 1377 (Fed.
    Cir. 2009) ..............................................................................................................4, 20

*Micro Chemical, Inc. v. Lextron, Inc.*,
    318 F.3d 1119 (Fed. Cir. 2003)...............................................................................3, 19

*Minks v. Polaris Indus., Inc.*,
    546 F.3d 1364 (Fed. Cir. 2008)..................................................................................1, 8

*NCS Multistage v. TCO Products*,
    6:20-cv-00622-ADA, Dkt. #271 (Aug. 25, 2022) (Albright, J.).............................18

*Norman v. Grove Cranes U.S., L.L.C.*,
    750 F. App'x 269 (5th Cir. 2018) ............................................................................3, 17

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
    575 F.2d 1152 (6th Cir. 1978) ....................................................................................11

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009) ........................................................................................6

*Schofield v. United States Steel Corp.*,
    2006 WL 8452286 (N.D. Ind. Mar. 31, 2006) ...........................................................20

*SimpleAir, Inc. v. AWS Convergence Techs., Inc.*,
    2012 WL 12978274 (E.D. Tex. Apr. 3, 2012) ...........................................................20

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F. 3d 1356 (Fed. Cir. 2008).....................................................................................6

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013)....................................................................................16

*Texas A & M Research Found. v. Magna Transp.*,
    338 F.3d 394 (5th Cir. 2003) .....................................................................................2, 14

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)......................................................................................7

*United States v. El-Mezain*,
    664 F.3d 467 (5th Cir. 2011) .....................................................................................3, 16

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*,
    2019 WL 3334563 (E.D. Mich. July 25, 2019) ........................................................16, 17

*Wordtech Systems, Inc v. Integrated Networks Solutions, Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ................................................................................9

<u>Statutes</u>

35 U.S.C. § 103 .....................................................................................................15

35 U.S.C. § 112(a) ................................................................................................15

<u>Other Authorities</u>

FED. R. CIV. P. 26 ............................................................................................13, 14

FED. R. EVID. 701 ...........................................................................................16, 17

FED. R. EVID. 702 ..............................................................................................1, 6

# I.    Summary of the Argument

The Court should strike the unreliable royalty opinions offered by DynaEnergetics Europe GmbH's and DynaEnergetics US, Inc.'s ("Dyna") expert Joanna Johnson. ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Ex. 1 at 105 [Johnson Report]. The analysis behind both approaches is not "the product of reliable principles and methods." FED. R. EVID. 702.

Johnson's unreliable ongoing royalty calculation. Ms. Johnson's exclusive reliance on the license agreement from March 2018 between Repeat Precision and non-party Diamondback renders her ongoing royalty opinion unreliable because that license is not comparable to the hypothetical negotiation she analyzes under the *Georgia-Pacific* factors. Ex. 1 at 105-06, Ex 3.1. That agreement was negotiated between parties more closely related as inventor and promoter rather than as competitors. *See Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1373 (Fed. Cir. 2008) (holding that licenses in which parties were in dissimilar relationships that they would have been in a hypothetical negotiation cannot be "accept[ed] 'as conclusive'"); Ex. 2 at 24-27 [Holzen Report]. In addition, Diamondback expected to reap profits other than royalties, the agreement did not cover a comparable product (as Ms. Johnson concedes), ████████████████████████ ████████████████████████████████████████████████ Ex. 2 at 25-28; Ex. 1 at 39. Thus, because Ms. Johnson failed to "account for differences in . . . economic circumstances of the contracting parties," her testimony is inadmissible. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010).

Furthermore, Ms. Johnson undermines the reliability of her opinion by pointing to third-party alternatives available to *customers*. Ex. 1 at 78. That inquiry is irrelevant for reasonable royalty calculations. As the Federal Circuit has made clear, the only relevant question is whether

such alternatives were available to defendants (in this case Dyna)—an issue on which Ms. Johnson concedes she has no opinion. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340-41 (Fed. Cir. 2015); Ex. 3 at 172:3-173:19 [Johnson Deposition].

    <u>Johnson's unreliable lump sum royalty calculation</u>. Ms. Johnson's lump sum payment opinion fares no better. ████████████████████████████████████████ ████████████████████████████████████████████ Ex. 1 at 105. As the name suggests, HypoSets are three hypothetical workaround designs for Dyna's accused product. ███████ ████████████████████████████████████████████ Dyna does not currently have any prototypes or physical examples of these designs, much less a setting tool that Dyna had successfully manufactured and tested for reliability and safety. *See* Ex. 1 at 86. Ms. Johnson's reliance on the HypoSets is misplaced for three reasons.

    *First*, Dyna did not timely disclose the HypoSets to Repeat Precision. Repeat Precision first learned about the HypoSets when it received Dyna's rebuttal expert reports on November 29, 2022, six weeks after the close of fact discovery. Because this violation of discovery rules prejudiced Repeat Precision and because Dyna did not provide an excuse, the Court should exclude the evidence regarding the HypoSets. *See Texas A & M Research Found. v. Magna Transp.*, 338 F.3d 394, 402 (5th Cir. 2003); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2017 WL 5137401, at *13 (E.D. Tex. Nov. 4, 2017), *rev'd on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020).

    *Second*, Dyna failed to carry its burden of proving that these alternatives would have been "available" to it at the time of the hypothetical negotiation. *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011). Ms. Johnson's sole source regarding the availability of these tools and the time and cost required for implementing them is

her one-hour interview with Mr. Thilo Scharf, a *lay* witness and the VP of Product Line Management at Dyna. Ex. 1 at 2, 86-87; Ex. 3 at 28:14-22.

Although lay witnesses "may sometimes give opinions that require specialized knowledge . . . the witness must draw 'straightforward conclusions from observations informed by his own experience.'" *United States v. El-Mezain*, 664 F.3d 467, 512 (5th Cir. 2011). Mr. Scharf's untested (and undisclosed to Repeat Precision) opinions go beyond simple conclusions and stray into expert testimony because he opines on whether certain setting tools that do not exist could be developed. *See Norman v. Grove Cranes U.S., L.L.C.*, 750 F. App'x 269, 273 (5th Cir. 2018) (finding a lay witness's testimony on a complex issue of crane design insufficient to carry the plaintiff's burden of proof). Neither can Ms. Johnson critically evaluate Mr. Scharf's opinions because she is trained as an accountant and not as an engineer. Ex. 1 at 1, 86-87. Tellingly, Ms. Johnson fails to mention the only Dyna witness arguably qualified to opine on this issue, Mr. John Hughett. Ex. 1 at 86-87. And for good reason. Mr. Hughett's report only provides a few conclusory sentences per each HypoSet—again based on his own discussions with Mr. Scharf. Ex. 4 at 70-75 [Hughett Infringement Report]. Neither Ms. Johnson nor Mr. Hughett—nor any other person with knowledge designated by Dyna—provides any expert opinion to suggest these HypoSets were known and available to Dyna in 2020 at the time of the hypothetical negotiation.

Even assuming that Mr. Scharf's testimony can be taken at face value, it fails to prove that the HypoSets were available to Dyna. *See LaserDynamics*, 2011 WL 197869 at *2. Mr. Scharf does not explain how Dyna would have designed, developed, tested, tooled, programmed, and set-up these alternatives in 2020, at the time of the hypothetical negotiation. Ex. 1 at 33, 86-87. ■

3

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████ Thus, Dyna did not carry its

burden of showing that the HypoSets are anything but hypotheticals.

*Third*, Ms. Johnson's attempt to cap the lump sum royalty at the cost it would have taken

Dyna to implement the HypoSets "is wrong as a matter of law." *Mars, Inc. v. Coin Acceptors, Inc.*,

527 F.3d 1359, 1373 (Fed. Cir. 2008) (rejecting in dicta the "claim that reasonable royalty damages

[can be] capped at the cost of implementing the cheapest available, acceptable, noninfringing

alternative") *modified in other respect*, 557 F.3d 1377 (Fed. Cir. 2009).

## II. Background

Repeat Precision accuses Dyna of infringing the claims of U.S. Patent No. 9,810,035 (the

'035 Patent) by, for example, manufacturing, distributing, selling, and/or offering to sell the DS

Microset disposable setting tool, a device used to set frac plugs to isolate various parts of oil and

gas wells drilled in the earth's formations. Plaintiff's First Amended Complaint, 6:21-cv-00104-

ADA, Dkt. #9 at 1, 4-5 (Feb. 5, 2021).

Counsel for Dyna retained Ms. Johnson to quantify the amount of compensation that would

"be appropriate for Repeat Precision . . . to receive in the event that one or more of the asserted

claims of U.S. Patent No. 9,810,035 are found to be valid and infringed" by Dyna. Ex. 1 at 2. Ms.

Johnson proposes two alternative royalty models. Ex. 1 at 105. She bases both models on a

hypothetical negotiation between Repeat Precision and Dyna in 2020 under the fifteen factors

discussed in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120

(S.D.N.Y.1970); Ex. 1 at 37; *see generally Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301

(Fed. Cir. 2009) (applying the *Georgia-Pacific* factors).

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████ *See* Ex. 6 at 395-396, 484, 516, 692-694 [*Diamondback v Repeat Precision* Bench Trial Proceedings]; Ex. 1 at 39.

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████

In a September 11, 2019 order involving litigation between Repeat Precision and Diamondback, this Court concluded that the May 2018 license agreement's language was "clear and unambiguous" and in a December 22 order it found that the parties were not mistaken about the terms of the agreement. *Diamondback*, 2019 WL 7759501, at *2-3. Nevertheless, Ms. Johnson did not consider the May 2018 agreement, in part, because she believes that Diamondback "didn't understand the rights it was granting Repeat Precision." Ex. 1 at 44.



## III.    Legal Standard

Dyna must "prove by a preponderance of the evidence" that Ms. Johnson's opinions are admissible. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). Her opinions are admissible only if they are relevant, "will help the trier of fact to understand the evidence or to determine a fact in issue," and are "the product of reliable principles and methods" that were "reliably applied" to "the facts of the case." FED. R. EVID. 702. Thus, "[t]he court, in its role as gatekeeper, must exclude expert testimony that is not reliable." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F. 3d 1356, 1364 (Fed. Cir. 2008).

In this case, both parties compute reasonable royalties based on the fifteen-step test outlined in *Georgia-Pacific*. This "common approach, called the hypothetical negotiation or the 'willing licensor-willing licensee' approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent*, 580 F.3d at 1324. Johnson's hypothetical negotiation takes place in 2020. Ex. 1 at

6

33-34. Her analysis attempts "to recreate the ex ante licensing negotiation scenario and to describe the resulting agreement." *Lucent*, 580 F.3d at 1325.

## IV.    Argument

The Court should order Ms. Johnson's two proposed royalty calculations inadmissible.

### A.    Ms. Johnson's proposed ongoing royalty calculation is inadmissible.

Ms. Johnson's ongoing royalty calculation is deficient because it is based exclusively on a prior license agreement that is not comparable to the hypothetical negotiation. In addition, Ms. Johnson extensively discusses the legally irrelevant question of whether third-party non-infringing alternatives were available to customers but fails to analyze the key question of whether such alternatives were available to Dyna.

### 1.   The March 2018 license is dissimilar to the hypothetical negotiation.

Ms. Johnson's exclusive reliance on the March 2018 license agreement undermines the reliability of her ongoing royalty opinion because that license is not comparable to the 2020 hypothetical negotiation.

Under the hypothetical negotiation analysis, license agreements are an important factor in the determination of a reasonable royalty rate. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317-18 (Fed. Cir. 2011). But such license agreements must be comparable to the hypothetical negotiation. As the Federal Circuit noted in *Bio-Rad Lab'ys, Inc. v. 10X Genomics*

*Inc.*, 967 F.3d 1353 (Fed. Cir. 2020): "Assessing the comparability of licenses requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." *Id.* at 1373-74. Thus, when an expert bases a royalty determination exclusively on a license that is not comparable, her opinion is inadmissible. *See, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012).

The March 2018 license agreement is not comparable for four reasons. *First*, that license did not "arise[] under comparable circumstances as the hypothetical negotiation." *Bio-Rad*, 967 F.3d at 1373-74. Repeat Precision and Diamondback were more closely related as inventor and promoter, which is not comparable to the relationship between the parties at the hypothetical negotiation. Ex. 2 at 26.

████████████████████████████████████████████████████████████████████

███████████████

*Second*, the March 2018 agreement is not "economically comparable" to Ms. Johnson's hypothetical negotiation. *Bio-Rad*, 967 F.3d at 1373-74. ██████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ Ex. 6 at 596; *see also* Ex. 8 at 923; Ex. 9 at 934. Ms. Johnson points to nothing to indicate that Dyna and Repeat Precision would have made a similar arrangement as part of a hypothetical negotiation in 2020.

*Third*, the March 2018 license did not "involve[] comparable technology." *Bio-Rad*, 967 F.3d at 1373-74 ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████ *Finjan*, 626 F.3d at 1211; *see also Wordtech Systems, Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320-21 (Fed. Cir. 2010) (noting that when licenses "ar[i]se from divergent circumstances and cover[] different material," they are "not 'sufficiently comparable'").

*Fourth*, Repeat Precision and Diamondback terminated the March 2018 agreement in May 2018. Ex. 1 at 43. █████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Even if the March 2018 agreement were comparable, Ms. Johnson should have at least considered the May 2018 agreement as well, which would have yielded a higher royalty. She refused to do so. On Ms. Johnson's interpretation of the events following the signing of the May 2018 license, "Diamondback either didn't understand the rights it was granting Repeat Precision or, in the alternative, entered into this amendment with the intention of disregarding the rights granted." Ex. 1 at 44. This argument is in tension with this Court's 2019 orders that found that the terms of the May license were "clear and unambiguous" and that the parties were not mistaken about the terms of the agreement, in part because it presented only a slight alteration compared to the March 2018 agreement. *Diamondback*, 2019 WL 7759501, at *2-3. At the same time, Ms. Johnson acknowledged that "[t]he royalty rate indicator that may come out of the May 2018 agreement . . . itself would be proportionally larger than what has come out of the March 2018 original agreement." Ex. 3 at 118:20-119:6. Thus, Ms. Johnson's decision to ignore the May agreement is at best an inconsistency and at worst cherry picking designed to benefit Dyna.

Ms. Johnson's opinion about the ongoing royalty rate is unreliable because she arbitrarily and exclusively relies on a license agreement dissimilar to the 2020 hypothetical negotiation.

**2. Ms. Johnson's opinion as to whether third party alternatives were available to Dyna's customers is irrelevant.**

Ms. Johnson also wrongly opines that non-infringing alternatives available only to *customers* are relevant when determining a royalty payment. Applying the tenth *Georgia-Pacific* factor, Ms. Johnson concludes that customers have access to several setting tools offered by parties not involved in this lawsuit. Ex. 1 at 78. Specifically, she points to Diamondback DB10 and DB20, Kingdom Downhole Tools' KING#10 and KING#20, Fortress' Cyclops, GR Energy's Zipset 10 and Zipset 20, Schlumberger's CPST Pressure Setting Tool as well setting tools (including redressable setting tools) produced by Baker Hughes, Owen, Halliburton, and Wellboss Company.

Ex. 1 at 78. Although Ms. Johnson does not explain how this observation factors into her ultimate conclusions ██████████████████████████████████████████████████████████████████
██████████████████ [1] Ex. 1 at 105-06.

The caselaw, however, does not support Ms. Johnson's assertion that availability to *customers* of alternatives offered by third parties is a relevant consideration. Ms. Johnson appears to conflate a lost profits analysis—which is not at issue in this case—with the reasonable royalty calculation analysis advanced by both parties. Alternatives available to customers are relevant for a lost profits analysis. *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). But they do not apply when calculating royalties. As discussed above, the *Georgia-Pacific* factors are designed to analyze a hypothetical negotiation between parties at the time the infringement started. *Lucent*, 580 F.3d at 1324. In such a negotiation, non-infringing alternatives available to the *accused infringer*—not customers—are relevant. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1335 (Fed. Cir. 2015). For example, an infringer could consider stopping sales of the infringing product and switching to a non-infringing alternative. *Id.* In such cases, the alleged infringer must demonstrate that either existing or future alternatives were available to it. *Id.* at 1340. But the relevant inquiry is whether the alternative was available *to the infringer*. For her part, Ms. Johnson acknowledged under oath she has "not undertak[en] the analysis to see if those . . . [third party] commercially sold alternatives were available to DynaEnergetics." Ex. 3 at 172:3-173:19.

*AstraZeneca* illustrates that the availability to customers is irrelevant. In that case, AstraZeneca accused Apotex of infringing its patents covering the active ingredient in the

---

[1] To the extent Ms. Johnson contends that her analysis of third-party alternatives is also or only relevant to her lump sum royalty analysis, the Court should strike it for the same reasons.

prescription drug Prilosec. *AstraZeneca*, 782 F.3d at 1328. While Apotex did "not challenge the finding that it had no non-infringing formulation of its own," it claimed that a drug by a third party, KUDCo, was available to it. *Id.* at 1340-41. The Federal Circuit disagreed. *Id.* It held that because KUDCo's own patents covered that drug, the drug was not available to Apotex, for purposes of identifying a comparable alternative. *Id.* The Federal Circuit did not give any weight to the fact that customers had access to KUDCo's alternative drug—only to the fact that Apotex did not.

Indeed, another of Dyna's experts, Mr. Hughett, indicated that the alternatives available to customers <u>are irrelevant for reasonable royalty calculations</u>. *See* Ex. 4 at 163.

Because Ms. Johnson's discussion of the third-party alternatives fails to address the issue of whether they were available to Dyna and instead focuses on the legally irrelevant question of whether they were available to its customers, the Court should strike her opinion on this matter.

### B. Ms. Johnson's proposed lump sum royalty calculation is inadmissible.

The Court should also strike Ms. Johnson's proposed lump sum royalty calculation—which she derives from the costs Dyna would have incurred to implement the HypoSets—for three reasons. *First*, Dyna failed to disclose to Repeat Precision during discovery any information regarding the HypoSets. Instead, Repeat Precision first learned about them from the November 29, 2022 rebuttal reports from Ms. Johnson and Mr. Hughett. *Second*, Dyna has failed to prove that the HypoSets would have been available to it in 2020. *Third*, Ms. Johnson impermissibly capped the lump sum royalty to the costs Dyna would have incurred when implementing the HypoSets.

### 1. Dyna cannot remedy its failure to disclose the HypoSets during fact discovery.

Dyna failed to disclose timely the three HypoSets and how Dyna would have implemented them in 2020. Instead, it first revealed them to Repeat Precision on November 29, 2022 in the expert reports of Mr. Hughett and Ms. Johnson—after the close of fact discovery. Ex. 4 at 72-74; Ex. 1 at 86-88. Dyna's tardy disclosures are improper.

Rule 26 requires a party to supplement its interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." FED. R. CIV. P. 26(e)(1). And although expert theories need not be disclosed in response to interrogatories, parties must disclose the facts underlying those theories. *Ericsson*, 2017 WL 5137401, at *13.

Repeat Precision's interrogatory No. 8 reads:

> If you contend that there are acceptable non-infringing alternatives to the subject matter of any claims of the Asserted Patent, describe in detail the complete basis for your contention, including why you contend the alleged alternative is acceptable, when the alleged alternative was available, and why it does not infringe any claim of the Asserted Patent. Ex. 10 at 8 [Repeat Precision's First Set of Interrogatories].

On September 30, 2022, Dyna supplemented its response to this interrogatory and listed the third-party alternatives discussed in Section IV.A.2 above. Ex. 11 at 12-13 [Dyna's Second Response]. However, it failed to discuss any of the HypoSets. Instead, it provided a vague statement that read:


*Id.*

The statement is too vague to serve as a meaningful disclosure. *See Image Processing Techs., LLC v. Samsung Elecs. Co.*, 2020 WL 2499810, at *3 (E.D. Tex. May 14, 2020) (striking an expert's testimony about non-infringing alternatives "not name[d]" during fact discovery).

Dyna did not make Repeat Precision aware of its alleged intentions of developing in-house alternatives until it served Ms. Johnson's rebuttal damages report and Mr. Hughett's rebuttal

---

[2] The documents correspond to Ex. 13 and Ex. 14.

infringement report on November 29, 2022—more than six weeks after fact discovery closed on

October 12. Order Granting Jnt. Mtn. for Entry of Revised Scheduling Order, 6:21-cv-00104-

ADA, Dkt. #53 at 1 (W.D. Tex., Sept. 9, 2022). Because Dyna failed to disclose the HypoSets

before the close of discovery, it violated Rule 26. *See, e.g.*, *Freeny v. Murphy Oil Corp.*, 2015 WL

11108703, at *1 (E.D. Tex. May 29, 2015); *Ericsson*, 2017 WL 5137401, at *14.

Ms. Johnson's discussion regarding the HypoSets needs to be excluded because this

violation was not harmless. In evaluating whether a violation of Rule 26 is harmless, courts

consider four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party

of including the evidence; (3) the possibility of curing such prejudice by granting a continuance;

and (4) the explanation for the party's failure to disclose." *Magna Transp.*, 338 F.3d at 402. All

four factors cut against Dyna.

<u>Importance of the Evidence</u>. The evidence regarding the HypoSets is not central to Dyna's

defense in this case. It only supports one of Ms. Johnson's two royalty models. Ex. 1 at 105-06.

And evidence regarding damages models is generally considered less important than, for example,

evidence that would result in a finding of no liability. *See Ericsson*, 2017 WL 5137401, at *13;

*Allergan, Inc. v. Teva Pharm. USA, Inc.*, 2017 WL 1512334, at *5 (E.D. Tex. Apr. 27, 2017). This

factor, thus, weighs towards excluding the evidence.

<u>Prejudice to Repeat Precision</u>. Dyna's tardy disclosure of the HypoSets prejudiced Repeat

Precision. Repeat Precision proceeded through fact discovery without the ability to explore these

hypothetical design arounds with the relevant Dyna witnesses. *See Ericsson*, 2017 WL 5137401,

at *14. It formulated litigation strategy, proceeded through discovery, and hired experts to offer

opinions based on this assumption. Had Dyna timely disclosed, Repeat Precision could have

developed responses to this position when deposing Dyna's employees. For example, on

September 7, 2022, Repeat Precision deposed Thilo Scharf, Ms. Johnson's sole source of the information on HypoSets. Ex. 12 at 1 [Scharf Deposition]. Had Repeat Precision been aware of the HypoSets, it could have discovered facts that would have weakened Dyna's position, such as: why Dyna never contemplated these three newly revealed designs back in 2020 during the timeframe of the hypothetical negotiation, or whether Mr. Scharf's estimates that Dyna needs between 18 and 24 weeks to implement the HypoSets would have been the same in 2020. *Lucent*, 580 F.3d at 1324; Ex. 1 at 33-34. The Court should not reward Dyna for this litigation tactic by allowing it to introduce this evidence at trial. This factor too, then weighs towards excluding the evidence.

Possibility of Continuance. Third, this Court should not grant a continuance because it would delay the March 6, 2023 trial. Amended Scheduling Order, 6:21-cv-00104-ADA-DTG, Dkt. #64 at 2 (Dec. 12, 2022). The parties have already completed fact and expert discovery and have approximately ten weeks until trial during which they have to file responses and replies to these motions, provide pretrial disclosures and objections to them, file pretrial orders and motions in *limine*, and report for pretrial conference. *Id.* It would be unjust to Repeat Precision to reopen fact and expert discovery to remedy Dyna's failure to comply with its disclosure obligations. Because a continuance at this point would likely render the March 6 trial date infeasible, it would "unnecessarily delay trial." *See Ericsson*, 2017 WL 5137401, at *14; *Allergan*, 2017 WL 1512334, at *5.

Dyna's Explanation. Dyna has offered no explanation as to why it did not timely disclose the HypoSets. Moreover, as Repeat Precision argues in the contemporaneously filed motion to exclude portions of Mr. Hughett's expert report, Dyna also failed to timely share their contentions that claims 1, 10, 18, and 19 are invalid under 35 U.S.C. §§ 103 and 112(a). Repeat Precision's

Motion to Exclude Improper Opinions and Testimony of John P. Hughett, Section IV.A.2. Therefore, the discussion of HypoSets must be excluded because all four factors weigh towards this result.

### 2. Dyna failed to carry its burden of showing that the HypoSets were available to it in 2020.

The Court also should strike Ms. Johnson's discussion of the HypoSets because Dyna fails to meet its burden of proving these designs would have been available to them at the time of the hypothetical negotiation in 2020. As Ms. Johnson explains, because the HypoSets are not currently available, Dyna will have to design, develop, test, tool, program, and set them up. Ex. 1 at 86-87. As the Federal Circuit explained:

> When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a non-infringing substitute at that time. The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period.

*Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999); *see also SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013) (applying *Grain Processing* as part of the reasonable royalty analysis).

Dyna has presented little to no admissible evidence to carry its burden. The conversation with Mr. Scharf, a *lay* witness, is insufficient to make Ms. Johnson's *expert* opinion reliable. In her analysis of the HypoSets, Ms. Johnson's only source is a one-hour interview with Mr. Scharf, a lay witness. Ex. 1 at 85-87. She relies on his opinion to estimate the time and cost for implementing the HypoSets. *Id.* Even though "lay witnesses may sometimes give opinions that require specialized knowledge . . . the witness must draw 'straightforward conclusions from observations informed by his own experience.'" *El-Mezain*, 664 F.3d at 512 (striking testimony of lay witness testifying from experience); FED. R. EVID. 701.

16

A Michigan district court has struck the expert damages testimony in case involving similar expert facts. *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, 2019 WL 3334563, at \*7 (E.D. Mich. July 25, 2019). In *Webasto*, the defendant's director of engineering's discussion with the expert "form[ed] the sole foundation for the expert's testimony on non-infringing alternatives." *Id.* at 6. As in this case, the lay witness in *Webasto* based his testimony on his expertise. *Id.*; Ex. 1 at 85-87. The court struck the expert witness's testimony because it was "nothing but a mouthpiece for" the lay witness's opinion on the availability of non-infringing alternatives. *Webasto*, 2019 WL 3334563, at \*5.

Similar to the expert in *Webasto*, the opinions of Mr. Scharf are too complex to be admissible under Fed. R. Evid. 701. *Id.* at \*6. The design of setting tools is no simple undertaking. Ex. 4 at 8 (stating that a person of ordinary skill in the art must have a "Bachelor of Science degree in mechanical or petroleum engineering or a related discipline, and at least two (2) years of industry experience related to designing conventional downhole tools"); *see Norman*, 750 F. App'x at 273 (lay witness's testimony on a complex issue of crane design was insufficient to carry the plaintiff's burden of proof). Nor does Dyna allege that Ms. Johnson possesses the necessary expert credentials to critically evaluate the veracity of Mr. Scharf's opinion—she is a Certified Public Accountant, not an engineer. Ex. 1 at 1.

Even assuming that Ms. Johnson's relaying of Mr. Scharf's testimony is entitled to any weight, it is not sufficient to carry Dyna's burden. "In determining whether the alternative product is available, the court may consider whether: '(1) the defendant could readily obtain all of the material needed to implement the non-infringing alternative; (2) the non-infringing alternative was well known in the field at the time of infringement; and (3) the defendant had all of the necessary

equipment, know-how, and experience to use the non-infringing alternative.'" *LaserDynamics*, 2011 WL 197869, at \*3. These factors cut against Dyna.

Ms. Johnson does not disclose the details of Mr. Scharf's analysis that led him to conclude Dyna would have been able to implement the HypoSets today, let alone in 2020, when the hypothetical negotiation takes place. Ex. 1 at 85-87; *Grain Processing*, 185 F.3d at 1353-54. What's worse, Mr. Scharf conjures from thin air and with little justification his time and cost estimates. Ex. 1 at 85-87. ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████ Ex. 4 at 72-74; *see NCS Multistage v. TCO Products*, 6:20-cv-00622-ADA, Dkt. #271, at 1192-96 (Aug. 25, 2022) (Albright, J.) (ruling that a drawing and a prototype in early testing stages conjured by the defendant during litigation was not enough to show that the alternative would have been available *as a matter of law* at the time of the hypothetical negotiation). Thus, Mr. Scharf's last-minute guesswork at the conclusion of this litigation is not enough for Dyna to carry its burden. *See Astrazeneca AB v. Apotex*, 985 F. Supp. 2d 452, 499 (S.D.N.Y. 2013) (finding non-infringing alternative conceived during litigation insufficient because "it is pure speculation whether any of [Apotex's] various proposals would create a stable, bioequivalent product that was non-infringing. Apotex has never asked one of its many experts to try to create the revised formulation, much less to create and test it."), *aff'd in relevant part*, 782 F.3d 1324 (Fed. Cir. 2015).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ Thus, not even Mr. Scharf's relayed, unsupported testimony is enough to prove that the HypoSets are available to Dyna.

Neither is Mr. Hughett's expert testimony satisfactory. In his report, Mr. Hughett devotes a little more than a few sentences to each of the HypoSets. Ex. 4 at 70-75. He does not explain how Dyna would have implemented, tested, designed, and made sure that alternatives were safe for use by customers. *Id.* He does not opine on how long this would have taken. *Id.* Other than a short and conclusory statement—again based on a conversation with Mr. Scharf—that the designs are feasible, Mr. Hughett offers no independent analysis. *Id.* Notably, Ms. Johnson does not even rely on Mr. Hughett's report, even though he is the only witness arguably qualified to opine on this matter. Ex. 1 at 85-87. The experts' parroting of Mr. Scharf's lay witness opinions on complex engineering matters is not enough to satisfy Dyna's burden of showing that the HypoSets were available to it in 2020.

Thus, for these reasons alone, Ms. Johnson's lump sum royalty calculation which relies exclusively on the costs that Dyna would have incurred in transitioning to the HypoSets must be excluded.

### 3. Ms. Johnson attempts to impermissibly cap the lump sum royalty at the cost of implementing the HypoSets.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████

However, Ms. Johnson's analysis is contrary to the Federal Circuit's observations. In *Mars v. Coin Acceptors*, the Federal Circuit first noted that the district did not find that there were available non-infringing alternatives. *Mars*, 527 F.3d at 1373. It then noted that even if such alternatives were available, "it is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, non-infringing alternative." *Mars*, 527 F.3d at 1373. "To the contrary, an infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement." *Id.* Thus, albeit in dicta, the Federal Circuit disparaged Ms. Johnson's approach. *See, e.g.*, *SimpleAir, Inc. v. AWS Convergence Techs., Inc.*, 2012 WL 12978274, at *2 (E.D. Tex. Apr. 3, 2012) (adopting *Mars*); *DataTreasury Corp. v. Wells Fargo & Co.*, 2011 WL 8810604, at *14 (E.D. Tex. Aug. 2, 2011) (same).

Other courts have also noted that adopting Ms. Johnson's approach to computing royalties would reduce the fifteen *Georgia-Pacific* factors to just one: the cost of switching to a non-infringing alternative. As the District Court for the Northern District of Indiana explained, "[t]he other *Georgia-Pacific* factors should be considered in making the reasonable royalty determination," even in the presence of non-infringing alternatives. *Schofield v. United States Steel Corp.*, 2006 WL 8452286, at *6 (N.D. Ind. Mar. 31, 2006). Otherwise, as another court explained, the resulting test "would frustrate the very purposes of the patent damages statute which are to make the patentee whole." *Linear Tech. Corp. v. Micrel, Inc.*, 2006 WL 8425047, at *87 (N.D. Cal. June 9, 2006). Therefore, for this reason alone, Ms. Johnson's lump sum royalty analysis must be stricken.

## V. Conclusion

The Court should strike and preclude Ms. Johnson from testifying regarding her ongoing reasonable royalty model and her lump sum reasonable royalty model.

Dated: December 21, 2022                       Respectfully submitted,

By: */s/ Dinis Cheian*
     Dinis Cheian (Admitted *pro hac vice*)
     New York Bar No. 5958152
     dcheian@susmangodfrey.com
     SUSMAN GODFREY L.L.P.
     1301 Avenue of the Americas, Floor 32
     New York City, NY 10019
     Telephone: (212) 336-8330
     Facsimile: (212)-336-8340

     J. Hoke ("Trey") Peacock III
     Texas Bar No. 15679380
     tpeacock@susmangodfrey.com
     Shawn L. Raymond
     Texas Bar No. 24009236
     sraymond@susmangodfrey.com
     Shawn Blackburn (pro hac vice)
     Texas Bar No. 24089989
     sblackburn@susmangodfrey.com
     Krisina J. Zuñiga
     Texas Bar No. 24098664
     kzuniga@susmangodfrey.com
     SUSMAN GODFREY L.L.P.
     1000 Louisiana Street, Suite 5100
     Houston, TX 77002-5096
     Telephone: (713) 651-9366
     Facsimile: (713) 654-6666

     **ATTORNEYS FOR REPEAT PRECISION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2022, the foregoing document was served on all counsel of record via the Court's ECF system and/or via email.

*/s/ Dinis Cheian*
Dinis Cheian